## GUMBART v. WATERBURY CLUB HOLDING CORPORATION et al.

### No. 4147.

District Court, D. Connecticut.

May 31, 1939.

See, also, 27 F.Supp. 228.

Watrous, Hewitt, Gumbart & Corbin, of New Haven, Conn., for plaintiff.

Bronson, Lewis & Bronson, of Waterbury, Conn., for defendant.

### MOSCOWITZ, District Judge.

This is a motion made by the defendants for a directed verdict at the end of the plaintiff's case.

The complaint contains two causes of action designated as two counts. The first count is based upon alleged negligence on the part of the defendant, The Waterbury Club, in the operation of the Club, leased by it from the other defendant, The Waterbury Club Holding Corporation. The second count is based upon alleged nuisance.

It appears from the testimony of the plaintiff, and placing the most favorable interpretation upon the testimony of the plaintiff and his witnesses, that he was a guest, a paying guest, of The Waterbury Club. According to his testimony, he had parked his car in the regular parking place assigned to members and guests, and he went up to his room and removed his collar and tie and his coat and vest. He went down to his car, intending to get the mileage on his car in order to make a note of the mileage of his car to his employer, and that the Club-house door closed; that he tried the door and found it to be locked. He does not recall the exact order of events, but evidently he did get the mileage from the speedometer; thereafter he tried another door,—knocked on the door and rang a bell in an attempt to procure access to this Club, and was unsuccessful; that is, through any door.

According to the plaintiff's testimony, he left the Club-house around 11:25 P. M. The following morning,—there is some difference as to time,—it has been estimated as 8:30, 10:30, or 11:00 A. M.,—this is of no great consequence in the determination of this motion,—the plaintiff was discovered about twenty feet from a window, which window led from the parking space, just opposite to this window, about three feet away from the wall, there was some blood.

It is the plaintiff's counsel's contention that the plaintiff fell through this window, not knowing that there was a gymnasium and that there was a drop of about twelve and a half feet from the window to the floor of the gymnasium, and that by reason of the lights that appeared in the hall, the plaintiff did not know and was not informed of the presence of the drop to the gymnasium floor of some twelve and a half feet.

The record is barren, due to the failure of the plaintiff to remember, as a result of his accident, the plaintiff's entering this window and falling to the gymnasium floor. Whether he tripped, was pushed or assaulted has not been established. The window ledge, according to the plaintiff's photographer, was thirty and a half inches above the ground. It was not a means of ingress or egress. There was no invitation, either express or implied, extended to this plaintiff to use the window. It is not the customary and usual method of entering or leaving a building. It has not been shown that in any instance the windows of the premises were used for this purpose, and upon his testimony, without considering the question of burden of proof as to contributory negligence, it appears affirmatively that the plaintiff was guilty of negligence in entering these premises in this most unusual way if he did it voluntarily, and I am excluding now the possibility, for the purpose of this motion, that he was pushed or assaulted.

No negligence whatever has been established on the part of the defendant. Judge Hincks, in a well-considered opinion, D.C., 27 F.Supp. 228, 229, dealing with a motion to dismiss the complaint, which he granted, and which complaint was subsequently amended, properly held, in my judgment:

"I do not overlook the allegation of the first count that the unprotected window constituted a 'trap'. Technically a trap imports an affirmative intent or design, either malicious or mischievous, to cause injury. * *: * But it is evident from Paragraph 15 that the plaintiff has not used the word in this sense. Rather he has used it merely as a non-technical characterization of grounds of negligence elsewhere stated. Thus used, it adds no vitality to the pleading. For even if the complaint be deemed to show a hidden danger on the defendants' premises, it is still insufficient in that it fails to show that the defendants knew or should have known that persons without invitation or license were constantly using the window for entrance, Restatement of Torts, Sec. 335, or that such persons were about to attempt such an entry, Restatement of Torts, Sec. 337, Comment (a).

"If the plaintiff has meant to allege and in good conscience could allege that the defendants harbored a malicious and injurious design, he should have alleged the fact directly rather than by implication from the legal connotations of the word 'trap.' "

The accident is unfortunate, of course. The sympathy of the Court goes to this plaintiff, but under the law I cannot permit a jury to speculate. or guess. The cases must be decided on the evidence; they cannot. be based upon sympathy. I direct a verdict for the defendants on both causes of action.

.As I say, I regret very much that the plaintiff suffered injury, but damages cannot be based on that.

You can note an exception to the ruling on behalf of the plaintiff. The verdict is signed.